**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

KAY M. ROBERGE,
<u>Plaintiff-Appellee,</u>

v.

J. STEPHEN BUIS, Trustee,

No. 95-3133

<u>Defendant-Appellant,</u>

and

ROBERT ARNOLD ROBERGE,
<u>Defendant.</u>

Appeal from the United States District Court
for the Eastern District of Virginia, at Richmond.
Richard L. Williams, Senior District Judge.
(CA-95-488-3, BK-94-32674-S)

Argued: July 16, 1996

Decided: August 27, 1996

Before MURNAGHAN and ERVIN, Circuit Judges, and
BUTZNER, Senior Circuit Judge.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Bruce H. Matson, LECLAIR RYAN, P.C., Richmond,
Virginia, for Appellant. Kurt Erlenbach, ERLENBACH & ERLEN-
BACH, P.A., Titusville, Florida, for Appellee. **ON BRIEF:** Ver-

non E. Inge, Jr., LECLAIR RYAN, P.C., Richmond, Virginia, for Appellant.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Robert Arnold Roberge and Kay M. Roberge were husband and wife, owning a residence located in Florida as tenants by the entirety. He left home and secured an ex parte divorce in Virginia in an in rem proceeding where the marriage constituted the res. The Virginia state court never established personal jurisdiction over Kay Roberge and, thus, could not effect an equitable distribution of the marital assets.

After the divorce, Robert Roberge filed for bankruptcy in Virginia. The bankruptcy filing caused an automatic stay to issue as to any attempt to dispose of the marital property. 11 U.S.C. § 362. Kay Roberge, unaware of her former husband's bankruptcy filing, sought an equitable distribution in Florida state court of the marital property --in particular, the marital home. Upon learning of the bankruptcy stay, she requested relief from the stay in order to allow her attempt to secure equitable distribution to proceed in Florida courts.

The bankruptcy trustee opposed Kay Roberge's motion for a lifting of the stay. The bankruptcy court denied the requested relief from the automatic stay, reasoning that it did not matter whether it lifted the stay because, as a factual matter, under Florida statute § 689.15, Robert Roberge owned 50% of the property when he filed his bankruptcy petition. In re Roberge, 181 B.R. 854, 859-60 (Bankr. E.D. Va. 1995). Thus, the bankruptcy court believed that no special expertise was needed in order to dispose of the marital assets equitably. In its view, both the bankruptcy court and the Florida court could competently and fairly divide the property interest in equal halves.

2

The District Court for the Eastern District of Virginia, however, reversed the bankruptcy court, indicating that relief from the stay was proper in order to afford Kay Roberge an opportunity to establish the correct percentage of the property owned by Robert Roberge. In re Roberge, 188 B.R. 366 (E.D. Va. 1995). The Bankruptcy Trustee has appealed.

We agree with the district court. Robert and Kay Roberge owned their home as tenants by the entirety. Under Florida law, the divorce converted the tenancy by the entirety to a tenancy in common. Cummings v. Cummings, 330 So.2d 134, 135-36 (Fla. 1976); Fla. Stat. § 689.15. Florida law divides marital property into equal shares, unless there is a showing that one spouse is entitled to a greater share. Davis v. Dieujuste, 496 So.2d 806, 809 (Fla. 1986); Landay v. Landay, 429 So.2d 1197, 1199-1200 (Fla. 1983). Florida law permits unequal shares where one party has paid expenses related to the house, such as mortgage payments, insurance, taxes, and improvements. Barrow v. Barrow, 527 So.2d 1373, 1376-77 (Fla. 1988); Gabriel v. Gabriel, 625 So.2d 1230 (Fla. Dist. Ct. App. 1993). Florida law also may permit permanent lump sum alimony in the form of the payor's equity in the marital home in lieu of cash in certain instances. See, e.g., Gelman v. Gelman, 512 So.2d 236, 237 (Fla. Dist. Ct. App. 1987). Thus, in a Florida equitable distribution proceeding, Kay Roberge could possibly receive anywhere from 50% to 100% of the home.

Because the extent of each spouse's interest in the home turns on Florida law, the question of their respective interests is best determined by a court of that state. See, e.g., Butner v. United States, 440 U.S. 48, 54-55 (1979). Furthermore, federal law favors state retention of control over domestic relations. Caswell v. Long, 757 F.2d 608, 610-11 (4th Cir. 1985). The Fourth Circuit specifically adheres to the principle that generally, bankruptcy courts owe state courts deference in domestic matters. In re Robbins, 964 F.2d 342, 344-47 (4th Cir. 1992); see also In re White, 851 F.2d 170, 173-74 (6th Cir. 1988) (holding that "[i]t is appropriate for bankruptcy courts to avoid invasions into family law matters").

In deciding whether a bankruptcy stay should be lifted in order to allow a state court to decide a domestic matter, the Fourth Circuit bal-

3

ances the potential prejudice to the bankruptcy debtor's estate against the hardships that will be incurred by the party seeking relief from the stay if relief is denied. In re Robbins, 964 F.2d at 345. The Fourth Circuit considers factors in making that analysis which include:

> (1) whether the issues in the pending litigation involve only state law, so the expertise of the bankruptcy court is unnecessary;

> (2) whether modifying the stay will promote judicial economy and whether there would be greater interference with the bankruptcy case if the stay were not lifted because matters would have to be litigated in the bankruptcy court; and

> (3) whether the estate can be protected properly by a requirement that creditors seek enforcement of any judgment through the bankruptcy court.

Id.

Here, those factors weigh heavily in favor of lifting the stay. First, the question of what each spouse's interest in the marital home consists of turns on state law. Second, judicial economy will not be sacrificed by allowing a state court to determine a matter in which it alone has expertise. Third, the creditors will not be prejudiced. The facts of this case demonstrate no danger of collusion between the Roberges. But even more importantly, equity dictates that Ms. Roberge receive her interest--whether it be 50%, 100%, or any interest in between. Lifting the stay is for the sole purpose of making that determination. The bankruptcy court will retain jurisdiction over any interest that Robert Roberge retains in the house. To rule otherwise and allow an ex-husband debtor to deprive an elderly ex-spouse of property she would have become entitled to in an equitable distribution merely because the divorce was obtained ex parte in a different state, where the state court lacked jurisdiction to effect an equitable distribution, is contrary to principles of equity.

We caution, as the district court cautioned, that bankruptcy courts should not be permitted to be used as draconian tools in divorce pro-

4

ceedings to deny a spouse what would be his or her due interest in an equitable distribution proceeding.* We also recognize that in some circumstances former spouses may collude to defeat one spouse's creditors. Thus, a court, guided by the rubric we have applied, must give careful attention to the particular facts of the case. In this instance, we conclude that the district court's decision finding that the bankruptcy court abused its discretion was well-reasoned and correct.

The judgment is accordingly

AFFIRMED.

_____

*Thus, we agree with the district court's rejection of the Trustee's argument that Kay Roberge's right to an equitable distribution was cut off because she filed for the equitable distribution after the bankruptcy petition was filed.

5