533 So.2d 1171 (1988)
Darlene Lois MICELI, Appellant,
v.
Michael J. MICELI, Appellee.
Nos. 87-1395, 87-2607.
District Court of Appeal of Florida, Second District.
August 3, 1988.
Rehearing Denied November 12, 1988.
John Asbell and Elizabeth J. Van Arsdale of Asbell, Hains, Doyle and Pickworth, Naples, for appellant.
Stephen W. Sessums of Sessums & Mason, Tampa, for appellee.
DANAHY, Judge.
We have consolidated these appeals by the wife from a final judgment of dissolution of marriage and a subsequently entered judgment awarding attorney's fees to the wife. We find merit in the wife's argument concerning the financial awards made to her in the final judgment and reverse those aspects of the final judgment. We affirm the judgment awarding attorney's fees.
The parties were married on March 7, 1975, and separated on December 26, 1983. At the time of the final hearing, the husband was fifty-two years old and the wife was thirty-eight years old. The husband has children by a previous marriage, but there were no children of this marriage.
At the time of the marriage, the wife owned nominal assets and worked full time for TWA as a flight attendant. The husband at the time of marriage owned substantial assets having a value in the neighborhood of $1,000,000; the precise value was disputed. At the conclusion of this marriage, the husband held title to twenty-five pieces of real property, seventeen of which had been purchased during the marriage. Additionally, he held title to stocks, bonds and notes which had been acquired *1172 during the marriage. The wife's evidence indicated that these assets had a value of approximately $13,000,000; the husband's CPA testified that the husband's net worth was $7,852,411. The wife, on the other hand, accumulated no assets because she spent her entire salary on her living expenses.
The wife continued to work for TWA throughout the marriage. Because TWA did not have a base in Florida, the wife had to fly out of Chicago, where she resided in an apartment which she considered to be the residence of both her and the husband. The husband apparently lived most of the time in Florida. The wife testified that she came to Florida to spend time with her husband as much as possible.
The wife, while still technically working for TWA at the time of trial, was on "preferential recall" because the TWA flight attendants' union had gone on strike on March 17, 1986. The wife had attempted to find other employment but was unable to do so. Although her "preferential recall" status meant that TWA would rehire flight attendants according to seniority and need, the wife testified that it was possible she may never be rehired.
The husband testified that during the marriage his occupation was that of an investor. He bought and sold stocks and bonds; and he bought, sold and financed real properties. He received income from various sources  interest on investments, dividends on stocks, income from businesses, income from rental properties, income from municipal bonds, and proceeds from sales of property or mortgages of property. There was testimony that the husband's net cash flow was over $400,000 per year during the marriage. The parties maintained no joint bank accounts and, as noted above, the assets acquired by the husband during the marriage were titled in the husband's name alone.
In the final judgment of dissolution of marriage, the trial judge awarded the wife $150,000 "as lump sum alimony." Additionally, the wife was awarded the sum of $1,500 per month for a period of eighteen months as rehabilitative alimony; this despite the fact that the trial judge had awarded the wife temporary support of $3,000 per month pending the dissolution proceedings based on the wife's financial affidavit showing estimated monthly expenses of $3,450.
The final judgment contains no findings of fact on the subject of marital assets and equitable distribution; indeed, these terms do not appear in the judgment. Obviously, the trial judge tacitly concluded that none of the assets titled in the husband's name constituted marital assets and made no equitable distribution of marital assets unless, as the husband argues, the award to the wife of $150,000 as lump sum alimony represented an equitable distribution.
Parties to a dissolution proceeding are entitled to an equitable distribution of marital assets. The fact that title to these properties is held by the husband is not determinative. Buttner v. Buttner, 484 So.2d 1265 (Fla. 4th DCA 1986).
Because the trial judge made no findings of fact to support his conclusions, we cannot assess the propriety of those conclusions. Our examination of the record convinces us that at least some, perhaps a substantial portion, perhaps the greater portion, of the property owned by the husband should be considered marital assets. Marital assets are those assets which have been created by the parties' work efforts, services, or earnings. Turner v. Turner, 529 So.2d 1138 (Fla. 1st DCA 1988)[1]. Several propositions flow from that definition. Thus, the enhanced value of separately owned assets becomes a marital asset when that enhanced value is due to marital labor or funds. Once the threshold requirement of marital labor or funds has been established, increases in value attributable to marital labor, funds, inflation, and market conditions will all apply. Turner.
*1173 In support of the trial judge's apparent conclusion that virtually all of the assets titled in the husband's name should be shielded from equitable distribution, the husband belittles the wife's contribution to their marriage. He claims that the parties led "separate lives," each pursuing a separate career. On the contrary, the record reflects that the wife made substantial contributions to this marriage. In the first place, her salary provided her entire living expenses, thus relieving the husband of that financial obligation. Additionally, her employment by TWA gave the husband and his children certain privileges including reduced air fares on airlines other than TWA and free air fare on TWA. The record shows that the husband and his children took advantage of their air fare privileges. The husband and his children were also covered by the medical and dental insurance TWA offered employees and their families. The wife testified that she contributed, as she could, to the maintenance of the marital residences in Chicago and in Florida, and to the husband's businesses and business property. We think it is unfair to say, based on the record, that the wife was not truly a wife and that this was not truly a marriage. If the trial judge concluded that the wife was not entitled to equitable distribution because her contributions to the marriage were not worthy of recognition, he was in error.
We find that awarding the sum of $1,500 per month to the wife as rehabilitative alimony over a period of eighteen months was also in error. The record does not indicate, nor does the trial judge explain, why $3,000 per month temporary support was considered appropriate pending the dissolution of marriage proceedings, but the reduced sum of $1,500 per month was awarded as rehabilitative alimony.
Based on the foregoing, we reverse the financial awards to the wife in the final judgment and remand with directions that the trial judge revisit the matter of equitable distribution and provide findings of fact to support his conclusions both as to what assets of the husband are not marital assets and as to what portion of the marital assets should be awarded to the wife as an equitable distribution. The trial judge may take additional evidence, if necessary. We direct that the award of rehabilitative alimony be increased from $1,500 per month to $3,000 per month.
Reversed in part, affirmed in part, and remanded.
SCHEB, A.C.J., and PARKER, J., concur.
NOTES
[1] As of October 1, 1988, the matter of equitable distribution will be governed by the provisions of chapter 88-98, § 1, Laws of Florida. One source has been quoted as saying that this legislation essentially codifies case law on the subject. The Florida Bar News, June 15, 1988, p. 4.